UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| VIETNAM VETERANS OF AMERICA CONNECTICUT GREATER HARTFORD CHAPTER 120, VIETNAM VETERANS OF AMERICA, VIETNAM VETERANS OF AMERICA SOUTHERN CONNECTICUT CHAPTER 251, VIETNAM VETERANS OF AMERICA CONNECTICUT CHAPTER 270, and VIETNAM VETERANS OF AMERICA CONNECTICUT STATE COUNCIL,<br><br>　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br>　　　　　　　Defendants. | Civil Action No.: ___<br><br><br><br>December 27, 2011 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

From October 2001 through September 2010, Defendant Department of Defense ("DoD") and its component and subcomponent services systematically and wrongfully discharged approximately 28,800 service members who have service-connected disabilities on the basis of so-called "personality disorder." Veterans who responded courageously to the government's call to action after September 11, 2001 by serving in the Armed Forces have returned home only to find that DoD's personality disorder designation prevents them from accessing service-connected disability benefits and veterans health care. By carelessly disregarding the personality disorder regulations which were promulgated for the benefit of service members, DoD has broken the United States' longstanding promise to provide for its veterans.

Veterans' advocates such as Vietnam Veterans of America, a nonprofit organization whose founding principle is "*Never again will one generation of veterans abandon another*," pushed Congress to investigate DoD's mistreatment of service members in 2007.  Although DoD discharged significantly fewer service members on the basis of personality disorder after this Congressional investigation, DoD refuses to admit that it mistreated veterans or to repair the harm that its punitive practice has caused to those it discharged on this basis from 2001 to 2007.  As a result, thousands of veterans who served their country and whom DoD discharged on the basis of personality disorder are now unable to access the service-connected disability compensation and medical care they are due.

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory and injunctive relief to compel the disclosure and release of agency records improperly withheld from Vietnam Veterans of America, Vietnam Veterans of America Connecticut Greater Hartford Chapter 120, Vietnam Veterans of America Southern Connecticut Chapter 251, Vietnam Veterans of America Connecticut Chapter 270, and Vietnam Veterans of America Connecticut State Council by Defendant United States Department of Defense, its components Department of the Army, Department of the Navy, and Department of the Air Force, and its subcomponents the United States Marine Corps, the National Guard Bureau, the Army National Guard, and the Air National Guard; and Defendant United States Department of Homeland Security and its component the United States Coast Guard.

2.  Plaintiffs seek to compel the release of records on a matter of public concern; namely, Defendants' use of personality disorder discharges, since renamed "adjustment disorder" and "readjustment disorder" discharges, when separating service members from the armed forces and the National Guard Bureau.

2

**JURISDICTION AND VENUE**

3.  This Court has both subject matter jurisdiction over Plaintiffs' claims and personal jurisdiction over Defendant agencies pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction pursuant to 28 U.S.C. § 1331.

4.  Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(3), as Plaintiffs Vietnam Veterans of America Connecticut Greater Hartford Chapter 120, Vietnam Veterans of America Southern Connecticut Chapter 251, Vietnam Veterans of America Connecticut Chapter 270, and Vietnam Veterans of America Connecticut State Council reside in the District of Connecticut.

**PARTIES**

5.  Plaintiff Vietnam Veterans of America ("VVA") is a congressionally chartered nonprofit organization founded in 1978 with over 65,000 members and 650 chapters nationwide. VVA's goals are to promote and support the full range of issues important to veterans of all eras of service. VVA distributes news to its 65,000 members via its bimonthly-published magazine *The Veteran*, Facebook page, and electronic mailing list. VVA's legislative efforts have led to the establishment of the Vet Center system and the passage of legislation assisting veterans with job training and job placement, assisting veterans suffering from Agent Orange exposure, and permitting veterans to challenge adverse VA decisions in court.

6. Plaintiff Vietnam Veterans of America Connecticut Greater Hartford Chapter 120 ("VVA Hartford Chapter") is a 28-year-old chapter of VVA located in Hartford, Connecticut.

7. Plaintiff Vietnam Veterans of America Southern Connecticut Chapter 251 ("VVA Chapter 251") is a chapter of VVA located in Milford, Connecticut.

8. Plaintiff Vietnam Veterans of America Connecticut Chapter 270 ("VVA Chapter 270")

is a chapter of VVA located in Niantic, Connecticut.

9. Plaintiff Vietnam Veterans of America Connecticut State Council ("VVA Connecticut State Council") represents all of the Vietnam Veterans of America chapters located in Connecticut.

10. Defendant United States Department of Defense ("DoD") is the federal agency responsible for providing the military forces needed to deter war and to protect the security of the United States. DoD is an agency within the meaning of 5 U.S.C. § 552(f).

11. The Department of the Army ("Army"), a component entity of DoD, is the service branch of the United States armed forces responsible for land-based military operations.

12. The Department of the Navy ("Navy"), a component entity of DoD, is the service branch of the United States armed forces responsible for the preparation of naval forces necessary for the effective prosecution of war.

13. The Department of the Air Force ("Air Force"), a component entity of DoD, is the service branch of the United States armed forces responsible for cyperspace security and the projection of advanced aviation forces.

14. The United States Marine Corps ("Marine Corps"), a component entity of the Navy, is the service branch of the United States armed forces responsible for providing offensive attacks from the sea using the capabilities of the Navy to deliver a rapid combination of air and ground strikes.

15. The National Guard Bureau ("National Guard"), a component entity of the Army and the Air Force, is the primary organized reserve force for the United States armed forces responsible for providing the states and federal government with organized militia units trained and equipped to defend the United States and its interests both domestic and foreign.

16. The Army National Guard ("Army National Guard"), a component of the National Guard, is an organized reserve force for the Army responsible for providing the states and federal government with organized militia units trained and equipped to defend the United States and its interests both domestic and foreign.

17. The Air National Guard ("Air National Guard"), a component of the National Guard, is an organized reserve force for the Air Force responsible for providing the states and federal government with organized militia units trained and equipped to defend the United States and its interests both domestic and foreign.

18. Defendant Department of Homeland Security ("DHS") is the federal agency responsible for protecting the United States from terrorist attacks and responding to natural disasters. DHS is an agency within the meaning of 5 U.S.C. § 552(f).

19. The United States Coast Guard ("Coast Guard"), a component entity of DHS, is the service branch of the United States armed forces responsible for maritime homeland security, maritime law enforcement, search and rescue, marine environmental protection, and the maintenance of river, intracoastal and offshore aids to navigation.

## STATEMENT OF FACTS

**The Veterans' Benefits System Before September 11, 2001**

20. The American colonies began providing benefits to veterans of the military in 1636. Since then, the United States government has expanded this enterprise into a comprehensive system of veterans' benefits aimed to support those who have served their country in the armed forces of the United States.

21. The VA is required to provide health care and service-connected disability compensation to all veterans who have been disabled by an injury or illness incurred or aggravated during active military service.

**Service Members' Deployment to Iraq and Afghanistan in Support of the Overseas Contingency Operation**

22. In response to the terrorist attacks of September 11, 2001, DoD launched a large-scale military campaign that, in 2009, became known as the Overseas Contingency Operation ("OCO"). The campaign was subdivided into several smaller military operations including Operation Enduring Freedom and Operation Iraqi Freedom; Operation New Dawn is the successor to Operation Iraqi Freedom.

23. As of June 2010, 2.15 million service members have protected the United States' interests by deploying in support of OCO.

**The Rise in the Number of Service Members Discharged by DoD on the Basis of Personality Disorder Between 2001 and 2007**

24. Personality disorder ("PD") is a pervasive and inflexible pattern of inner experience and behavior that deviates markedly from the expectations of an individual's culture and leads to distress or impairment. Symptoms begin during adolescence or early adulthood.

25. The military classifies PD as a condition pre-existing military service.

26. Veterans discharged from the military on the basis of a PD diagnosis are not entitled to receive service-connected disability benefits or VA health care.

27. By its own admission, DoD dismissed 22,656 service members on the basis of PD between fiscal years 2001 and 2007; 3,372 of these discharged service members had served in combat or imminent danger zones in support of OCO. Approximately 2,800 of the service

6

members whom DoD had dismissed on the basis of PD had deployed in support of Operation Iraqi Freedom or Operation Enduring Freedom.

28. By discharging over 22,000 service members on the basis of PD, DoD saved the military approximately $4.5 billion in medical care and $8 billion in disability compensation that these service members would have received had they been discharged on the basis of Post-traumatic Stress Disorder ("PTSD") or another service-connected disability.

**DoD's Failure to Follow Medical Standards and Its Own Regulations When Discharging Service Members on the Basis of Personality Disorder**

29. The VA advises clinicians to interview individuals who knew the service members before they entered the military prior to making PD diagnoses.

30. DoD has admitted that its doctors failed to interview anyone but the service members before making most of the over 22,000 PD diagnoses that led to discharge.

31. Prior to 2008, DoD regulations on PD discharges required that service members get formal counseling regarding the reason for their impending discharge and receive a PD diagnosis from a psychiatrist or psychologist stating that the PD interfered with their ability to function in the military.

32. DoD's compliance with the counseling requirement was as low as 40% between 2001 and 2007, as was compliance with the diagnosis requirement. In 2008, the Government Accountability Office ("GAO") found that "DoD does not have reasonable assurance that its key personality disorder separation requirements have been followed" after reviewing PD discharges occurring between 2001 and 2007.

**Exposure of DoD's Mistreatment of Service Members**

33. In 2007, *The Nation* published two articles exposing DoD's exploitation of wounded service members. The articles revealed that DoD had dramatically increased the number of PD discharges between 2001 and 2007 in order to rein in what could reach hundreds of millions of dollars in disability compensation for veterans discharged honorably and diagnosed with PTSD.

34. VVA and other veterans' advocates contended that the service members who had been discharged on the basis of PD actually suffered from PTSD or Traumatic Brain Injury (TBI).  VVA also argued that DoD had fabricated the overwhelming majority of PD discharges so that the VA would not have to provide disabled veterans with the health care and service-connected disability compensation that they had earned.

35. DoD's mistreatment of service members prompted Congress to hold a hearing investigating PD discharges in July 2007.

36. DoD's exploitation of service members caused Congress to pass and President Bush to sign a January 2008 bill requiring that DoD submit a report on PD discharges. The bill did not require DoD to submit records verifying the claims made in the report.

37. In June 2008, DoD released an eleven-page report in which it admitted that DoD leadership "shares Congress' concern regarding the use of PD as the basis for administratively separating Service members who deployed in support of GWOT [the Global War on Terror] and who may have been more appropriately processed for disability." However, DoD did not release records verifying or expanding on the claims made in the report.

38. DoD failed to release data on the National Guard or the Coast Guard's use of PD discharges in its June 2008 report.  According to information released during pending litigation in *Vietnam Veterans of America  v. U.S. Dep't of Defense*, No. 3:10-cv-1972 (D. Conn.), the

8

National Guard has discharged 290 service members and the Coast Guard has discharged 837 service members for PD since October 2001.

39. In August 2008, VVA and other advocates' criticism of DoD's exploitation of service members prompted DoD to change its PD discharge policy to require diagnosis by a psychiatrist or Ph.D.-level psychologist. For service members who have served in imminent danger pay areas, DoD changed its PD discharge policy to require diagnostic attention to PTSD or other mental illness co-morbidity; corroboration of the PD diagnosis by a second psychiatrist or Ph.D.-level psychologist; and endorsement by the Surgeon General of the appropriate Military Department.

40. Three of the four military services were not in compliance with any of DoD's more rigorous PD separation requirements in fiscal year 2008.

41. In September 2010, GAO determined that "the military services have not demonstrated full compliance with DoD's PD separation requirements."

42. DoD's decision to continue inappropriately discharging service members on the basis of PD from 2008 through the present time has caused an unknown number of veterans who served courageously in the armed forces to be denied service-connected disability benefits and VA health care.

**DoD's Redistribution of Disorder-Related Discharges Since Exposure of DoD's Mistreatment of Service Members**

43. After the PD discharge scandal of 2007-08, DoD discharged significantly fewer service members on the basis of PD.

44. After the PD discharge scandal of 2007-08, DoD discharged significantly more service members on the basis of PTSD.

9

45. After the PD discharge scandal of 2007-08, DoD also discharged significantly more service members on the basis of "other designated physical or mental conditions not amounting to disability." Adjustment disorder and readjustment disorder discharges fall into this category.

46. VVA has argued that DoD is discharging more service members on the basis of adjustment or readjustment disorder so as to cut the costs that increased when DoD was forced to discharge fewer service members on the basis of PD.

47. Even in light of these statistics, DoD and its components continue to deny that any veteran was misdiagnosed with PD before 2008. In August 2010, the Army told the Associated Press that they had "reviewed the paperwork of all deployed soldiers dismissed with a personality disorder between 2001 and 2006" and "'did not find evidence that soldiers with PTSD had been inappropriately discharged with personality disorder.'"

48. In September 2010, VVA testified before the U.S. House of Representatives Veterans' Affairs Committee that the significant decrease in PD discharges after 2007 indicates that many of the service members discharged on the basis of PD actually have service-connected disabilities.

49. Because DoD refuses to admit that it incorrectly discharged many service members on the basis of PD, an unknown number of veterans who served with integrity and valor in the armed forces continue to be denied service-connected disability benefits and VA health care.

**Plaintiffs' FOIA Requests to DoD, Army, Navy, Air Force, Marines, National Guard Bureau, Army National Guard, and Air National Guard**

50. On April 4, 2011, Plaintiffs faxed and mailed FOIA requests to DoD, Army, Navy, Air Force, Marines, National Guard Bureau, and Air National Guard for various records relating to the use by branches of the United States armed forces and the National Guard of PD

10

discharges and adjustment disorder or readjustment disorder discharges to discharge service members since October 1, 2001.

51. On April 4, 2011, Plaintiffs mailed a FOIA request to the Army National Guard.

52. Plaintiffs' FOIA requests of April 4, 2011 followed a previous series of FOIA requests by Plaintiffs to the same offices within DoD.  The previous series of requests is the subject of pending litigation in *Vietnam Veterans of America v. U.S. Dep't of Defense*, No. 3:10-cv-1972 (AWT) (D. Conn.).  While Plaintiffs maintain that the records sought by the second requests of April 4, 2011 clearly fell within the scope of the previous requests, Defendants have taken a contrary position.  Plaintiffs filed the second requests in an effort to avoid unnecessary litigation.

53. The FOIA requests to DoD, Army, Navy, Air Force, Marines, National Guard Bureau, Army National Guard, and Air National Guard were substantially the same. The letters to the components and subcomponents of DoD did not reference DoD or any components or subcomponents other than the one to whom the FOIA request was addressed.

54. A copy of the letter to DoD is attached to this complaint as Exhibit A. DoD, Army, Navy, Air Force, Marines, National Guard Bureau, Army National Guard, and Air National Guard received the request on or about April 4, 2011.

55. In a letter dated April 13, 2011, Army responded to Plaintiffs' request stating that it had referred the request to the offices most likely to have responsive records. Plaintiffs did not receive any further records.

56. In a letter dated April 22, 2011, DoD responded to Plaintiffs' request stating that it would postpone discussion of these requests until after the release of documents in *Vietnam*

*Veterans of America v. U.S. Dep't of Defense*, No. 3:10-cv-1972 (D. Conn.) on May 6, 2011. Plaintiffs did not receive any further records.

57. To date, Plaintiffs have received no correspondence from the Navy, Air Force, Marines, National Guard Bureau, Army National Guard, and Air National Guard regarding this FOIA request.

58. To date, DoD, Army, Navy, Air Force, Marines, National Guard Bureau, Army National Guard, and Air National Guard have not provided the records requested by Plaintiffs in their FOIA request, notwithstanding the FOIA's requirement of an agency response within twenty (20) working days.

59. Plaintiffs have exhausted the applicable administrative remedies with respect to their FOIA request to DoD, Army, Navy, Air Force, Marines, National Guard Bureau, Army National Guard, and Air National Guard.

60. DoD, Army, Navy, Air Force, Marines, National Guard Bureau, Army National Guard, and Air National Guard have wrongfully withheld the requested records from Plaintiffs.

**Plaintiffs' FOIA Request to the Coast Guard**

61. On April 4, 2011, Plaintiffs emailed and mailed a FOIA request to the Coast Guard for various records relating to the use by the Coast Guard of PD discharges and adjustment disorder or readjustment disorder discharges to discharge service members since October 1, 2001. A copy of that letter is attached to this complaint as Exhibit B. The Coast Guard received the request on April 5, 2011.

62. In an undated letter received by Plaintiffs on April 28, 2011, Coast Guard responded to Plaintiffs' request stating that it would postpone discussion of these requests until after the

release of documents in *Vietnam Veterans of America v. U.S. Dep't of Defense*, No. 3:10-cv-1972 (D. Conn.) on May 6, 2011. Plaintiffs did not receive any further records.

63. To date, the Coast Guard has not provided the records requested by Plaintiffs in their FOIA request, notwithstanding the FOIA's requirement of an agency response within twenty (20) working days.

64. Plaintiffs have exhausted the applicable administrative remedies with respect to their FOIA request to the Coast Guard.

65. The Coast Guard has wrongfully withheld the requested records from Plaintiffs.

## FIRST CAUSE OF ACTION:

**Defendants DoD and DHS Failed to Disclose and Release Records Responsive to Plaintiffs' Request**

66. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 65 as if repeated and reincorporated herein.

67. The Army, Navy, and Air Force, each a component of DoD, have violated Plaintiffs' rights to DoD records under 5 U.S.C. § 552.

68. The Marines, National Guard, Army National Guard, and Air National Guard, each a subcomponent of DoD, have violated Plaintiffs' rights to DoD records under 5 U.S.C. § 552.

69. The Coast Guard, a component of DHS, has violated Plaintiffs' rights to DHS records under 5 U.S.C. § 552.

## SECOND CAUSE OF ACTION:

**Defendants DoD and DHS Failed to Affirmatively Disclose Records Responsive to Plaintiffs' Request**

70. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 65 as if repeated and reincorporated herein.

71. Defendants' failure to make their records available to the public violates 5 U.S.C. § 552(a)(1)-(2).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1) Assume jurisdiction over this matter;

2) Order Defendants to disclose the requested records in their entireties and to make copies available to Plaintiffs;

3) Provide for expeditious proceedings in this action;

4) Award Plaintiffs costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 552(a)(4)(E); and

5) Grant any other relief the Court deems appropriate.

Dated December 27, 2011
New Haven, Connecticut

           Respectfully Submitted,

           By: /s/ *Michael J. Wishnie*
           Michael J. Wishnie, Supervising Attorney, ct27221
           Melissa S. Ader, Law Student Intern
           James Eimers, Law Student Intern
           Rebecca F. Kraus, Law Student Intern
           Veterans Legal Services Clinic
           JEROME N. FRANK LEGAL SERVICES ORGANIZATION
           P.O. Box 209090
           New Haven, CT 06520-9090
           Phone: (203) 432-4800
           *Counsel for Plaintiffs*