# Exhibit A

# The Jerome N. Frank Legal Services Organization
YALE LAW SCHOOL

April 4, 2011

Department of Defense
OSD/JS FOIA Requester Service Center
Office of Freedom of Information
1155 Defense Pentagon
Washington, DC 20301-1155

Re: **Freedom of Information Act Request**

Dear FOIA Officer:

  Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, we request access to and copies of records[1] in possession of the Department of Defense ("DoD"). These records are requested by the Veterans Legal Services Clinic at the Jerome N. Frank Legal Services Organization on behalf of Connecticut Greater Hartford Chapter 120 of Vietnam Veterans of America, Southern Connecticut Chapter 251 of Vietnam Veterans of America, Connecticut Chapter 270 of Vietnam Veterans of America, the Connecticut State Council of Vietnam Veterans of America, and Vietnam Veterans of America ("Requesters").

  This letter requests records related to whether DoD abided by its regulations and procedures in discharging service members[2] for reasons of personality disorder and adjustment disorder or readjustment disorder from branches of the United States Armed Forces[3] since October 1, 2001. This letter also requests information on how the 2008 report entitled "Report to Congress on Administrative Separations Based on Personality Disorder, Fiscal Years 2002 thru 2007"[4] was compiled and all records demonstrating compliance with DoD Directive/Instruction 1332.14.

  The records sought herein are the subject of FOIA requests 11-F-0109, 11-F-0568, and 11-F-0658, already submitted by Requesters, and are also the subject of pending litigation in *Vietnam Veterans of America Connecticut Greater Hartford Chapter 120 v. U.S. Dep't of Defense*, No. 3:10-cv-1972 (D. Conn.). Counsel for Defendants in that suit has taken the position, however, that the FOIA requests at issue in the litigation do not seek the records listed expressly herein. Without conceding that the requests at issue in *VVA v. DoD* fail to cover the

---

[1] The term "records" as used herein, includes all records or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, videotapes, audio tapes, emails, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, or studies.
[2] The terms "service members" or "members of the Armed Forces," as used in this letter, refer to officers and enlisted members of the Army, Navy, Marines, Air Force, Coast Guard, Marines Corps, and National Guard, and includes both active duty members and reservists.
[3] The term "Armed Forces," as used in this letter, refers to the Army, Navy, Air Force, Coast Guard, Marine Corps, National Guard, and any sub-components of these branches of service including, but not limited to, the Reserves.
[4] OFFICE OF THE UNDER SECRETARY OF DEFENSE, REPORT TO CONGRESS ON ADMINISTRATIVE SEPARATIONS BASED ON PERSONALITY DISORDER (2008), *available at* http://www.joshuakors.com/pdreport.pdf [hereinafter DoD, 2008 Report].

records listed herein, and adhering to the position that the prior requests do cover these records, Requesters nevertheless submit this new request to moot out the objection of counsel for Defendants in *VVA v. DoD* and to avoid unnecessary litigation regarding the scope of the prior requests.

In particular, Requesters hereby request all records (a) indicating whether DoD has abided by its regulations and procedures in discharging service members for reasons of alleged personality disorder, adjustment disorder, or readjustment disorder, from all branches of the United States Armed Forces, from October 1, 2001 to the present; (b) related to the 2008 report entitled "Report to Congress on Administrative Separations Based on Personality Disorder, Fiscal Years 2002 thru 2007;"[5] and (c) demonstrating compliance with DoD Directive/Instruction 1332.14, including but not limited to:

1. For every service member discharged for reasons of personality disorder, or adjustment or readjustment disorder since October 1, 2001, all records related to (a) each individual service member's discharge, including but not limited to the individual separation packets of each service member; (b) pre-service interviews and evaluations, medical records, and performance evaluations during their service; (c) each service member's psychological treatment and counseling record, including but not limited to pre-service psychological evaluation reports, in-service psychological evaluation reports, and correspondence between mental health professionals and the service member's command regarding the service member's mental health; and (d) the service member's disciplinary record, including but not limited to formal hearings, non-judicial punishments, courts-martial proceedings and correspondence between superiors about the service member's performance.
2. All records demonstrating compliance with DoD Directive/Instruction 1332.14 between October 1, 2001 and the present, including but not limited to records demonstrating whether service members were notified of their impending separation, given an opportunity to correct behavior before separation proceedings began, provided with the mandated type of diagnosis by the appropriate medical professional, formally counseled regarding their problems with functioning in the military, and formally counseled that personality disorder is not a disability. For service members who served in an imminent danger pay area, this additionally includes but is not limited to records demonstrating whether the separations were corroborated by a peer or higher-level mental health professional, were endorsed by the Surgeon General of the Military Department concerned, and addressed the possible co-morbidity of Post-Traumatic Stress Disorder or other mental illness co-morbidity.
3. All records related to the drafting and compilation of "Report to Congress on Administrative Separations Based on Personality Disorders, Fiscal Years 2002 thru 2007,"[6] including but not limited to how the Department of Defense compiled the aggregate total of personality disorder discharges from fiscal years 2002-2007; how the component services compiled the aggregate total of personality disorder discharges from

---

[5] DoD, *supra* note 4.
[6] DoD, *supra* note 4.

P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 · TELEPHONE 203 432-4800 · FACSIMILE 203 432-1426
COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

fiscal years 2002-2007; and the methods used by the Department of Defense to locate the files of service members who were discharged because of personality disorders.

All requested records responsive to items (1) and (2) above may be provided with names and personally identifying details redacted. Thus, these records are not exempt under the Freedom of Information Act. The Freedom of Information Act, 5 U.S.C. § 552(b)(6), exempts information from disclosure if that disclosure would lead to an unwarranted invasion of privacy. Determination of this exemption requires "a balancing of the public's interest in obtaining the information against any possible invasions of privacy which would result from disclosure." *Burkins v. United States*, 865 F. Supp. 1480, 1502 (D. Colo. 1994). The Supreme Court has held that this balancing act does not preclude the disclosure of military records when names and other private details are redacted. *See, e.g., Department of the Air Force v. Rose,* 425 U.S. 352 (1976).

Requesters request that any records that exist in electronic form be provided in electronic format on a compact disc. If this information is not available in a succinct format, we request the opportunity to view the records in your offices.

Requesters agree to pay search, duplication, and review fees up to $100. If the fees amount to more than $100, Requesters request a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and (a)(4)(A)(iii), as the information is not sought for commercial uses and its disclosure is in the public interest, because it is likely to contribute significantly to public understanding of the operations and activities of the government and is not in the commercial interest of the requesters. If the request is denied in whole or in part, please justify all deletions by reference to the specific exemptions of the Act. In addition, please release all segregable portions of otherwise exempt material. We reserve the right to appeal your decision to withhold any information or to deny a waiver of fees.

FOIA's legislative history makes clear that the "fee waiver provision . . . is to be liberally construed in favor of waivers for non-commercial requesters." *Fed. Cure v. Lappin*, 602 F. Supp. 2d 197, 201 (D.D.C. 2009) (internal quotation marks omitted). DoD FOIA regulations explain that a fee waiver will be granted where "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government," and "is not primarily in the commercial interest of the requester." 32 C.F.R. § 286.28(d)(3)(i), (ii).

To determine whether disclosure is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government, DoD regulations look to: (i) The subject of the request; (ii) The informative value of the information to be disclosed; (iii) The contribution to an understanding of the subject by the public likely to result from disclosure; and (iv) The significance of the contribution to public understanding. *Id.* § 286.28(d)(3)(i)(A-D).

The subject of Requesters' request plainly "involves issues that will significantly contribute to the public understanding of the operations or activities of the Department of Defense." *Id.* § 286.28(d)(3)(i)(A). The records requested concern whether DoD abided by its own separation regulations when discharging nearly 26,000 service members on the basis of

P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 · TELEPHONE 203 432-4800 · FACSIMILE 203 432-1426
COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

personality disorder; how DoD responds to requests for personality disorder or adjustment or readjustment disorder discharge upgrades; and how DoD compiled the data it reported to Congress in the statutorily mandated "Report to Congress on Administrative Separations Based on Personality Disorders, Fiscal Years 2002 thru 2007." All these issues are integral to public understanding of governmental operations and activities.

The information which Requesters seek has significant informative value because it is "meaningful" and "shall inform the public on the operations or activities of the Department of Defense." 32 C.F.R. § 286.28(d)(3)(i)(B). DoD has refused to fully explain whether it abided by its own separation regulations in discharging nearly 26,000 service members on the basis of personality disorder, even after the Government Accountability Office reported that military compliance with these regulations was as low as forty-eight percent.[7] Further, DoD has never explained where it found or how it compiled the data reported in its 2008 report. This is particularly troubling in light of a conversation in which the Air Force Personnel Center claimed that before 2008, the Air Force did not code for separation on the basis of a psychological or psychiatric personality disorder diagnosis. DoD has not provided the public with the meaningful information necessary to understand the way in which DoD determined, on a case-by-case basis, whether service members had personality disorder and whether it abided by its own regulations in doing so.[8] The disclosure of the requested records will enable the public to verify DoD's unsubstantiated statements that nearly all personality disorder discharges between 2001 and 2006 were appropriate.[9] Disclosure is particularly meaningful because the public remains unaware of whether DoD has misused personality disorder discharges, how DoD polices its own discharge policies in practice, and whether disabled veterans continue to be unjustly denied the benefits they are due by virtue of their service to the nation while in uniform.

Disclosure of the requested records will contribute to an understanding of the subject by the general public, rather than simply informing "the individual requester or small segment of interested persons." 32 C.F.R. § 286.28(d)(3)(i)(C). Requesters Greater Hartford Chapter 120 of Vietnam Veterans of America, Southern Connecticut Chapter 251 of Vietnam Veterans of America, and Connecticut Chapter 270 of Vietnam Veterans of America are active chapters in the Vietnam Veterans of America (VVA) organization. Requester Connecticut State Council of Vietnam Veterans of America represents the chapters of VVA located in the State of Connecticut. VVA is a highly respected 32-year-old nonprofit organization with 60,000 members and 635 chapters nationwide.[10] VVA's legislative efforts have led to the establishment of the Vet Center system and the passage of legislation assisting veterans with job training and

---

[7] U.S. GOV'T ACCOUNTABILITY OFFICE, DEFENSE HEALTH CARE: ADDITIONAL EFFORTS NEEDED TO ENSURE COMPLIANCE WITH PERSONALITY DISORDER SEPARATION REQUIREMENTS (Oct. 2008), *available at* http://www.gao.gov/new.items/d0931.pdf; *see also* Debra A. Draper, Dir., Health Care, U.S. Gov't Accountability Office, Testimony Submitted to the H. Comm. on Veterans' Affairs (Sept. 15, 2010), *available at* http://veterans.house.gov/hearings/Testimony.aspx?TID=3192&Newsid=2266&Name=%20Debra%20A.%20Draper,%20Ph.D.,%20M.S.H.A.
[8] DoD, 2008 Report, *supra* note 4.
[9] Anne Flaherty, *Advocates See Trouble for Misdiagnosed Soldiers*, ASSOCIATED PRESS, Aug. 15, 2010, *available at* http://abcnews.go.com/Politics/wireStory?id=11404572.
[10] A Short History of VVA, VIETNAM VETERANS OF AMERICA, http://www.vva.org/history.html (last visited Sept. 29, 2010).

job placement, assisting Agent Orange victims, and permitting veterans to challenge adverse VA decisions in court.[11]

Requesters' research will involve determining, on a case-by-case basis, why and how DoD discharged service members on the basis of personality disorder, adjustment disorder, and readjustment disorder; whether these diagnoses were inaccurate and improper; and the methodology by which DoD provided Congress with the numbers of service members discharged on the basis of personality disorder between fiscal years 2002 and 2007. This information will be used to inform the public whether DoD has unjustly denied disabled veterans the benefits they deserve, and to enable the public to prevent DoD from misusing personality disorder and adjustment or readjustment disorder discharges in the future. The general public is highly interested in this issue. *The Nation*[12] and *The Associated Press*[13] have recently published articles on personality disorder and adjustment disorder discharges for popular consumption. In addition, Congress has responded to public discontent by holding a hearing on personality disorder discharges.[14] VVA is immensely capable of disseminating its findings to the public. VVA continuously produces publications related to veterans' health and government affairs, and disseminates these publications via mail and on its website.[15] In addition, VVA has a long history of working with the media and testifying at Congressional hearings in order to publicize information and issues.[16] VVA plans to disseminate its research on personality disorder and adjustment disorder discharges via publications, work with the media, and attendance at Congressional hearings.

Disclosure of the requested records will "lead to a significant understanding of the issue" of personality disorder and adjustment disorder discharges, and will "be unique in contributing unknown facts, thereby enhancing public knowledge." 32 C.F.R. § 286.28(d)(3)(i)(D). DoD has kept the public in the dark about whether it followed regulations in discharging nearly 26,000 service members on the basis of personality disorder. The public knowledge of the number of personality disorder discharges between 2001 and 2007 and of DoD's official policies related to personality disorder discharges is worthless unless the public gets to look at the ways in which DoD actually dealt with real service members on a case-by-case basis.[17] Indeed, unless DoD clarifies the way in which it came up with the numbers it provided to Congress, the numbers themselves are suspect. DoD continues to conceal the procedures and processes by which it determined that service members had personality disorder and the methodology by which it determined how many service members were discharged on the basis of personality disorder.

DoD's insistence that the overwhelming number of the discharges were appropriate is undermined by the dramatic decrease in the number of personality disorder discharges since

---

[11] *Id.*
[12] Joshua Kors, *Disposable Soldiers: How the Pentagon Is Mistreating Wounded Vets*, NATION, Apr. 26, 2010, at 11.
[13] Flaherty, *supra* note 9.
[14] Personality Disorder Discharges: Impact on Veterans' Benefits, HOUSE COMMITTEE ON VETERANS' AFFAIRS, http://veterans.house.gov/hearings/hearing.aspx?NewsID=2266.
[15] VVA Publications, VIETNAM VETERANS OF AMERICA, http://www.vva.org/brochures.html (last visited Sept. 29, 2010).
[16] A Short History of VVA, *supra* note 10.
[17] DoD, 2008 Report, *supra* note 4.

DoD released its report at the behest of Congress in 2008.[18] The public has a right to know whether DoD is unjustly preventing the disabled veterans discharged before 2008 from receiving veterans benefits they have earned defending their country. Only if the public fully understands how DoD uses personality disorder and adjustment or readjustment disorder discharges will it be able to prevent misuse of these discharges in the future and to help improperly discharged service members access the benefits they deserve.

In determining whether disclosure of information is primarily in the commercial interest of the requesters, DoD will consider "[t]he existence and magnitude of a commercial interest," and, if a commercial interest exists, whether the requesters' primary interest in disclosure is commercial. 32 C.F.R. § 286.28(d)(3)(ii)(A-B). Requesters have no commercial interest in gaining access to the requested records. Requesters are nonprofit organizations whose primary goal is to assist veterans. Because no commercial interest exists, Requesters' primary interest in disclosure is not commercial.

Finally, pursuant to 5 U.S.C. § 552(a)(6)(A)(i), we expect a response within the twenty (20)-day statutory time limit. Should you have any questions in processing this request, we can be contacted by mail at the address below or by telephone at (203) 432-4800.

Please furnish all applicable records to:

Melissa Ader, Law Student Intern
James Hamel, Law Student Intern
Rebecca Kraus, Law Student Intern
Michael Wishnie, Supervising Attorney
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520-9090

Thank you for your assistance and prompt attention to this matter.

Sincerely,

*[signature: Michael J. Wishnie / JDH]*

Melissa S. Ader, Law Student Intern
James D. Hamel, Law Student Intern
Rebecca F. Kraus, Law Student Intern
Michael J. Wishnie, Supervising Attorney
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Organization

---

[18] Flaherty, *supra* note 9.