# Exhibit B

# The Jerome N. Frank Legal Services Organization
YALE LAW SCHOOL

April 4, 2011

U.S. Coast Guard
HAF/ICIOD
1000 Coast Guard Pentagon
Washington, DC 20330-1000

Re: **Freedom of Information Act Request**

Dear FOIA Officer:

 Pursuant to the federal Freedom of Information Act, 5 U.S.C. § 552, we request access to and copies of records[1] in possession of the Coast Guard (and all its component offices). These records are requested by the Veterans Legal Services Clinic at the Jerome N. Frank Legal Services Organization on behalf of Connecticut Greater Hartford Chapter 120 of Vietnam Veterans of America, Southern Connecticut Chapter 251 of Vietnam Veterans of America, Connecticut Chapter 270 of Vietnam Veterans of America, the Connecticut State Council of Vietnam Veterans of America, and Vietnam Veterans of America ("Requesters").

 This letter requests records related to whether the United States Coast Guard ("Coast Guard")[2] abided by its regulations and procedures in discharging members of the Coast Guard[3] from service for personality disorder, adjustment disorder, or readjustment disorder, since October 1, 2001. This letter also requests all records demonstrating compliance with Section 12.B.16 of the Coast Guard Personnel Manual ("CGPM").

 The records sought herein are the subject of FOIA requests already submitted by Requesters, by letters dated October 10, 2010, February 21, 2011, and March 7, 2011, and are the subject of pending litigation in *Vietnam Veterans of America Connecticut Greater Hartford Chapter 120 v. U.S. Dep't of Defense*, No. 3:10-cv-1972 (D. Conn.). Counsel for Defendants in that suit has taken the position, however, that the FOIA requests at issue in the litigation do not seek the records listed expressly herein. Without conceding that the requests at issue in *VVA v. DoD* fail to cover the records listed herein, and adhering to the position that the prior requests do cover these records, Requesters nevertheless submit this new request to moot out the objection of counsel for Defendants in *VVA v. DoD* and to avoid unnecessary litigation regarding the scope of the prior requests.

---

[1] The term "records" as used herein, includes all records or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, videotapes, audio tapes, emails, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, or studies.
[2] The terms "United States Coast Guard" or "Coast Guard," as used in this letter, refers to the Coast Guard and any sub-components of that branch of service including, but not limited to, the Reserves.
[3] The terms "service members," "Coast Guardsmen," or "members of the Coast Guard," as used in this letter, refer to officers and enlisted members of the Coast Guard, and includes both active duty members and reservists.

P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 · TELEPHONE 203 432-4800 · FACSIMILE 203 432-1426
COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

In particular, Requesters hereby request all records (a) indicating whether the Coast Guard has abided by its regulations and procedures in discharging service members for reasons of alleged personality disorder, adjustment disorder, or readjustment disorder from October 1, 2001 to the present; (b) demonstrating compliance with section 12.B.16 of the CGPM, including but not limited to:

1. For every service member discharged for reasons of personality disorder, or adjustment or readjustment disorder since October 1, 2001, all records related to (a) each individual service member's discharge, including but not limited to the individual separation packets of each service member; (b) pre-service interviews and evaluations, medical records, and performance evaluations during their service; (c) each service member's psychological treatment and counseling record, including but not limited to pre-service psychological evaluation reports, in-service psychological evaluation reports, and correspondence between mental health professionals and the service member's command regarding the service member's mental health; and (d) the service member's disciplinary record, including but not limited to formal hearings, non-judicial punishments, courts-martial proceedings and correspondence between superiors about the service member's performance.

2. For every service member discharged for reasons of personality disorder, or adjustment or readjustment disorder since October 1, 2001, all records demonstrating compliance with CGPM § 12.B.16, including but not limited to (a) records demonstrating that commanding officers advised each member in writing that he or she was being considered for discharge for personality or adjustment disorder, afforded the member the opportunity to make a written statement on his or her own behalf, and stated that a member refused to make such a statement if the member refused; (b) psychiatric descriptions of the condition, statements regarding whether an individual had the mental capacity to understand the action being contemplated in his or her case, and medical statements attesting to the absence of a ratable disability; and (c) all documentation required by CGPM § 12.B.16.j, including but not limited to, a copy of the letter notifying the member of the reason(s) for administrative processing and of his or her rights; the member's signed statement of awareness, statement on his or her own behalf, or refusal to make a statement; report of medical board or SF-502; a copy of the closed out form CG-3306 (30 June 1983 ed.) showing average Proficiency, Leadership, and Conduct marks and copy of the current CG-3306 showing factor marks; summary of military offenses; any other pertinent comments or recommendations over the commanding officer's signature.

All requested records responsive to items (1) and (2) above may be provided with names and personally identifying details redacted. Thus, these records are not exempt under the Freedom of Information Act. The Freedom of Information Act, 5 U.S.C. § 552(b)(6), exempts information from disclosure if that disclosure would lead to an unwarranted invasion of privacy. Determination of this exemption requires "a balancing of the public's interest in obtaining the information against any possible invasions of privacy which would result from disclosure." *Burkins v. United States*, 865 F. Supp. 1480, 1502 (D. Colo. 1994). The Supreme Court has held that this balancing act does not preclude the disclosure of military records when names and other private details are redacted. *See, e.g., Department of the Air Force v. Rose,* 425 U.S. 352 (1976).

Requesters request that any records that exist in electronic form be provided in electronic format on a compact disc. If this information is not available in a succinct format, we request the opportunity to view the records in your offices.

Requesters agree to pay search, duplication, and review fees up to $100. If the fees amount to more than $100, Requesters request a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and (a)(4)(A)(iii), as the information is not sought for commercial uses and its disclosure is in the public interest, because it is likely to contribute significantly to public understanding of the operations and activities of the government and is not in the commercial interest of Requesters. If the request is denied in whole or in part, please justify all deletions by reference to the specific exemptions of the Act. In addition, please release all segregable portions of otherwise exempt material. We reserve the right to appeal your decision to withhold any information or to deny a waiver of fees.

FOIA's legislative history makes clear that the "fee waiver provision . . . is to be liberally construed in favor of waivers for non-commercial requesters." *Fed. Cure v. Lappin*, 602 F. Supp. 2d 197, 201 (D.D.C. 2009) (internal quotation marks omitted). Department of Homeland Security ("DHS") FOIA regulations explain that a fee waiver will be granted where "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government," and "is not primarily in the commercial interest of the requester." 6 C.F.R. § 5.11(k)(1)(i), (ii).

To determine whether disclosure is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government, DHS regulations look to: (i) the subject of the request; (ii) the informative value of the information to be disclosed; (iii) the contribution to an understanding of the subject by the public likely to result from disclosure; and (iv) the significance of the contribution to public understanding. 6 C.F.R. § 5.11(k)(2)(i-iv).

The subject of Requesters' request certainly "concern[s] identifiable operations or activities of the federal government, with a connection that is direct and clear, not remote or attenuated." 6 C.F.R. § 5.11(k)(2)(i). The records requested concern the methodology by which the Coast Guard decides to separate service members on the basis of personality disorder, adjustment disorder, or readjustment disorder; and whether the Coast Guard abided by its own separation regulations when discharging members on the basis of personality disorder, adjustment disorder, and readjustment disorder. All these issues are integral to public understanding of governmental operations and activities.

The information that Requesters seek has significant informative value because it is "meaningfully informative about government operations or activities." 6 C.F.R. § 5.11(k)(2)(ii). The Coast Guard has never publicly released the number of service members it has discharged on the basis of personality disorder. In addition, the Coast Guard has not explained the policies it uses to discharge service members on the basis of "personality disorder." The disclosure of the requested records will enable the public to determine whether the Coast Guard has misused personality disorder discharges; the policies and methodology by which the Coast Guard

discharges service members on the basis of personality disorder, adjustment disorder, or readjustment disorder; whether the Coast Guard has abided by its own regulations in discharging members based on personality disorder; and whether disabled veterans of the Coast Guard continue to be unjustly denied the benefits they are due by virtue of their service to the nation while in uniform.

Disclosure of the requested records will contribute to an understanding of the subject by a "reasonably broad audience of persons interested in the subject." 6 C.F.R. § 5.11(k)(2)(ii). Requesters Greater Hartford Chapter 120 of Vietnam Veterans of America, Southern Connecticut Chapter 251 of Vietnam Veterans of America, and Connecticut Chapter 270 of Vietnam Veterans of America are active chapters in the Vietnam Veterans of America ("VVA") organization. Requester Connecticut State Council of Vietnam Veterans of America represents the chapters of VVA located in the State of Connecticut. VVA is a highly respected 32-year-old nonprofit organization with 60,000 members and 635 chapters nationwide.[4] VVA's legislative efforts have led to the establishment of the Vet Center system and the passage of legislation assisting veterans with job training and job placement, assisting Agent Orange victims, and permitting veterans to challenge adverse VA decisions in court.[5]

Requesters' research will involve determining, on a case-by-case basis, why and how the Coast Guard discharged Coast Guardsmen on the basis of personality disorder, adjustment disorder, and readjustment disorder and whether or not these diagnoses were inaccurate and improper. This information will be used to inform the public whether the Coast Guard has unjustly denied disabled veterans the benefits they deserve, and to enable the public to prevent the Coast Guard from misusing personality disorder and adjustment or readjustment disorder discharges in the future. The general public is highly interested in this issue. *The Nation*[6] and *The Associated Press*[7] have recently published articles on personality disorder and adjustment disorder discharges for popular consumption. In addition, Congress has responded to public discontent by holding a hearing on personality disorder discharges.[8] VVA is immensely capable of disseminating its findings to the public. VVA continuously produces publications related to veterans' health and government affairs, and disseminates these publications via mail and on its website.[9] In addition, VVA has a long history of working with the media and testifying at Congressional hearings in order to publicize information and issues.[10] VVA plans to disseminate its research on personality disorder and adjustment disorder discharges via publications, work with the media, and attendance at Congressional hearings.

Disclosure of the requested records will "contribute 'significantly' to public

---

[4] A Short History of VVA, VIETNAM VETERANS OF AMERICA, http://www.vva.org/history.html (last visited Sept. 29, 2010).
[5] *Id.*
[6] Joshua Kors, *Disposable Soldiers: How the Pentagon Is Mistreating Wounded Vets*, NATION, Apr. 26, 2010, at 11.
[7] Anne Flaherty, *Advocates See Trouble for Misdiagnosed Soldiers*, ASSOCIATED PRESS, Aug. 15, 2010, *available at* http://abcnews.go.com/Politics/wireStory?id=11404572.
[8] Personality Disorder Discharges: Impact on Veterans' Benefits, HOUSE COMMITTEE ON VETERANS' AFFAIRS, http://veterans.house.gov/hearings/hearing.aspx?newsid=622 (last visited Sept. 29, 2010).
[9] VVA Publications, VIETNAM VETERANS OF AMERICA, http://www.vva.org/brochures.html (last visited Sept. 29, 2010).
[10] A Short History of VVA, *supra* note 4.

understanding of government operations or activities," and public understanding will be "enhanced by the disclosure to a significant extent." 6 C.F.R. § 5.11(k)(2)(iv). The Coast Guard's use of personality disorder, adjustment disorder, or readjustment disorder discharges is completely unknown to the public. Because the Coast Guard and DHS, unlike the Department of Defense,[11] were never required by Congress to submit a report on their use of personality disorder discharges, the Coast Guard and DHS have never explained the procedures related to personality disorder discharges. The Coast Guard has kept the public in the dark about how, in practice and on a case-by-case basis, it determined that service members should be separated from the Coast Guard with a personality disorder, adjustment disorder, or readjustment disorder discharge.

The public has a right to know whether the Coast Guard is unjustly preventing the disabled veterans who defended their country from receiving veterans benefits. Only if the public fully understands how the Coast Guard uses personality disorder and adjustment or readjustment disorder discharges will it be able to prevent misuse of these discharges in the future and to help improperly discharged Coast Guardsmen access the benefits they deserve.

In determining whether disclosure of information is primarily in the commercial interest of the requester, DHS considers "[t]he existence and magnitude of a commercial interest," and, if a commercial interest exists, whether the requesters' primary interest in disclosure is commercial. 6 C.F.R. § 5.11(k)(3)(i-ii). Requesters have no commercial interest in gaining access to the requested records. Requesters are nonprofit organizations whose primary goal is to assist veterans. Because no commercial interest exists, Requesters' primary interest in disclosure is not commercial.

Finally, pursuant to 5 U.S.C. § 552(a)(6)(A)(i), we expect a response within the twenty (20)-day statutory time limit. Should you have any questions in processing this request, we can be contacted by mail at the address below or by telephone at (203) 432-4800.

Please furnish all applicable records to:

Melissa Ader, Law Student Intern
James Hamel, Law Student Intern
Rebecca Kraus, Law Student Intern
Michael Wishnie, Supervising Attorney
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520

---

[11] See OFFICE OF THE UNDER SECRETARY OF DEFENSE, REPORT TO CONGRESS ON ADMINISTRATIVE SEPARATIONS BASED ON PERSONALITY DISORDER (2008).

Thank you for your assistance and prompt attention to this matter.

Sincerely,

*[signature: Michael J. Wishnie / JDH]*

Melissa S. Ader, Law Student Intern
James D. Hamel, Law Student Intern
Rebecca F. Kraus, Law Student Intern
Michael J. Wishnie, Supervising Attorney
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Organization